UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BETTY A. HARRIS                                    CIVIL ACTION

VERSUS                                             NO. 05-3248

JO ANNE B. BARNHART,                               SECTION "A" (2)
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

## FINDINGS AND RECOMMENDATION

Plaintiff, Betty A. Harris, seeks judicial review pursuant to Section 405(g) of the

Social Security Act (the "Act") of the final decision of the Commissioner of the Social

Security Administration (the "Commissioner"), denying plaintiff's claim for disability

insurance benefits ("DIB") under Title II of the Act.  42 U.S.C. §§ 405(g), 423.  This

matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)

and Local Rule 73.2E(B).

As ordered, plaintiff filed a timely memorandum of facts and law.  Record Doc.

No. 10.  Defendant filed a timely reply memorandum.  Record Doc. No. 13.

I.     <u>PROCEDURAL HISTORY</u>

Harris filed an application for DIB on July 24, 2003, alleging disability since September 13, 2002 because of schizophrenia.  (Tr. 39, 44).  After her application was denied, she requested and received a hearing before an Administrative Law Judge ("ALJ").  On April 28, 2005, the ALJ denied plaintiff's application.  (Tr. 10-14).  After the Appeals Council denied review on June 17, 2005 (Tr. 3-5), the ALJ's decision became the final decision of the Commissioner for purposes of this court's review.

II.    <u>STATEMENT OF ISSUES ON APPEAL</u>

Plaintiff, who is appearing pro se, contends that the ALJ made the following errors:

A.     The ALJ erred by failing to obtain all of plaintiff's medical records since 1984.

B.     The ALJ erred by failing to consider plaintiff's pre-hearing letter objecting to the testimony of a vocational expert.

C.     The ALJ erred by accepting the conclusions of the vocational expert, which were based on inadequate information, and because the vocational expert was not a physician.

D.     The ALJ failed to listen to plaintiff's testimony about the errors that the Commissioner had made concerning plaintiff's file.

E.     The ALJ erred by allowing another judge to sign his decision letter for him.

In her memorandum, plaintiff complains of her representative's performance and of various delays during the processing of her application and during the pendency of her appeal to the Appeals Council.  She also includes some allegations concerning the handling of another claim that she filed with the Social Security Administration <u>after</u> the decision in the instant case.  None of these complaints are validly before this court, which has jurisdiction only to hear plaintiff's appeal from the Commissioner's "final decision." 42 U.S.C. § 405(g); <u>Califano v. Sanders</u>, 430 U.S. 99, 107-08 (1977); <u>Brandyburg v. Sullivan</u>, 959 F.2d 555, 559 (5th Cir. 1992).  Thus, the court addresses only plaintiff's assignments of errors that are directed to the ALJ's decision, which is the final decision of the Commissioner for purposes of this court's review.

III.   <u>ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL</u>

The ALJ made the following relevant findings:

1.   Plaintiff has not engaged in substantial gainful activity since the alleged onset date of September 13, 2002.

2.   The medical evidence establishes that Harris has paranoid schizophrenia, recurrent, in remission, and type 2 diabetes mellitus, which are severe impairments.

3.   Her impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4.   Claimant's allegations regarding her symptoms and limitations are partially credible.

5.   Harris has the residual functional capacity to do light work, to lift and/or carry and push and/or pull 20 pounds occasionally and 10 pounds frequently; to sit for about 6 hours in an 8-hour day; to stand and/or walk for about 6 hours in an 8-hour day; but she should avoid working in excessively stressful environments requiring close concentration.

6.   Plaintiff cannot perform her past relevant work as an accountant.

7.   Harris has skills transferable to other work within her residual functional capacity, specifically including but not limited to such semi-skilled jobs as bookkeeper, timekeeper, auditing clerk and payroll clerk.

(Tr. 13-14).

IV.   <u>ANALYSIS</u>

A.   <u>Standards of Review</u>

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  <u>Waters v. Barnhart</u>, 276 F.3d 716, 716 (5th Cir. 2002); <u>Loza v. Apfel</u>, 219 F.3d 378, 389 (5th Cir. 2000); <u>Spellman v. Shalala</u>, 1 F.3d 357, 360 (5th Cir. 1993).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Loza</u>, 219 F.3d at 393; <u>Spellman</u>, 1 F.3d at 360.  This court may not "reweigh the

4

evidence in the record, try the issues <u>de novo</u> or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." <u>Newton v. Apfel</u>, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner, rather than the courts, must resolve conflicts in the evidence. <u>Id.</u>

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. <u>See</u> <u>Arkansas v. Oklahoma</u>, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. <u>Villa v. Sullivan</u>, 895 F.2d 1019, 1022 (5th Cir. 1990); <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. <u>Newton</u>, 209 F.3d at 452; <u>Martinez v. Chater</u>, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for DIB, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998

5

(2005).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  <u>Id.</u> §§ 404.1520, 416.920; <u>Waters</u>, 276 F.3d at 716; <u>Loza</u>, 219 F.3d at 393.[1]  The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  <u>Leggett v. Chater</u>, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. <u>Newton</u>, 209 F.3d at 453.  If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the

---

[1]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  <u>Id.</u> §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  <u>Id.</u> §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  <u>Id.</u> §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  <u>Id.</u> §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  <u>Id.</u> § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

national economy that the claimant is capable of performing.  When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  Id.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history."  Martinez, 64 F.3d at 174.

B.      Factual Background

Plaintiff testified that she is married to Nelson Joseph Harris and has three adult children.  She stated that she graduated from Southern University in Baton Rouge in 1975 with a B.S. degree in accounting and a minor in computer science.  She said she had worked in the financial field until late 2002 or early 2003.  (Tr. 116).

Harris testified that she stopped working in 1984 when she was first diagnosed with schizophrenia and was hospitalized for two months.  She stated that she has been hospitalized six or seven times since then, including in 1995 and 1996.  (Tr. 117).  She said she received Social Security benefits during that time, but when she returned to work, her benefits stopped.  She continued to work until the end of 2002.  (Tr. 118).

Plaintiff stated that her mental disorder prevents her from working and that it has been an ongoing illness since 1996.  (Tr. 119).  She said that her illness and the

7

medications she takes slow her down.  She testified that she cannot work as an accountant because she cannot meet deadlines and makes too many mistakes, which was why her employment was terminated by her last employer.  She said her illness affected her work performance.  Harris stated that she is only able to concentrate "somewhat" and that she can no longer perform multiple tasks at once.  She said that, at her age, she cannot comprehend some of the newer things that are brought into the work place, especially with computers.  (Tr. 120).

Plaintiff testified that her diabetes is controlled with diet and exercise.  She said that her weight had increased while she was taking Zyprexa[2] from 1999 through January 2004, when she was hospitalized and her medications were changed to Haldol D[3] injection, Cogentin[4] and Benadryl.  (Tr. 121).  She stated that her diabetes limits her in some ways, such as occasional dizziness.  (Tr. 121-22).  However, she stated that diet and

---

[2]Zyprexa (generic name:  olanzapine) "helps manage symptoms of schizophrenia, the manic phase of bipolar disorder, and other psychotic disorders. It is thought to work by opposing the action of serotonin and dopamine, two of the brain's major chemical messengers."  PDRhealth, avail. at http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/zyp1509.shtml.

[3]Haldol (generic name:  haloperidol) "is used to reduce the symptoms of mental disorders such as schizophrenia.  It is also prescribed to control tics (uncontrolled muscle contractions of face, arms, or shoulders) and the unintended utterances that mark Tourette's syndrome."  Id. at http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/hal1193.shtml.

[4]Cogentin "possesses both anticholinergic [blocking the passage of impulses through the parasympathetic nerves, Dorland's Illustrated Medical Dictionary 100 (29th ed. 2000) (hereinafter "Dorland's"] and antihistaminic effects" and is indicated for "use in the therapy of all forms of parkinsonism."  Physicians' Desk Reference 2007 (59th ed. 2005).

exercise successfully brought her weight down from 245 to 218 pounds.  She said a normal weight for her height of 5' 7 1/2" is 195 pounds.  She testified that the Zyprexa increased her weight and her blood glucose level.  Harris said that she has a family history of diabetes and that, after her weight gain, she asked her doctor to change her medication, which helped her get down to 220 pounds.  She stated that her blood glucose level is checked every six months by the doctor, or sometimes sooner, and that she has a machine to check it herself.  (Tr. 122).

Harris testified that she believes the Social Security Administration examiners who denied her application and said that her psychiatric diagnosis was in remission were lying and exaggerating because they admittedly did not receive her records from St. Charles Parish Hospital.  She stated that she called the hospital, which told her that the Social Security Administration had not requested those records.  Plaintiff said she requested the records herself, which she provided to her representative.  She testified that she had been hospitalized at St. Charles Parish Hospital on February 10, 1999 and January 21, 2004. (Tr. 123).  She said the Commissioner also failed to collect all her records from the mental health clinic that she attends every month, although she signed releases for both facilities.  (Tr. 124).

Harris stated that she thought she could work if she were self-employed, but she did not think that she could work anywhere with procedures and policies that she must

follow or that she could comprehend any new training.  She said she thought she could work part-time and self-employed and still receive Social Security benefits, but she had not done any gainful work.

Plaintiff testified that she works at her church, teaches Sunday school, listens to gospel music and reads inspirational works.  She said she exercises, does chores around the house, sews and cooks.  She stated that she stays active and gets along with other people, but will say what she thinks if someone tries to harm her or say something about her.  (Tr. 125).  Harris said she has filed grievances in the past if someone has mistreated her or discriminated against her.

Plaintiff testified that she takes one milligram of Risperdal[5] daily and that she used to be on Geodon.[6]  (Tr. 128).

Plaintiff's husband, Nelson Harris, testified that they have been married for 29 years.  He said that his wife is suffering from the same problems now that she suffered in 1995 and 1996.  He stated that he believes she could not work an eight-hour job

---

[5]Risperdal (generic name: risperidone) "is prescribed for the treatment of schizophrenia, a severe mental disorder that can cause delusions (false beliefs) and hallucinations.  It is also used for the short-term treatment of mania associated with bipolar disorder.  Risperdal is thought to work by muting the impact of dopamine and serotonin, two of the brain's key chemical messengers."  PDRhealth, avail. at http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/ris1382.shtml.

[6]Geodon (generic name: ziprasidone hydrochloride) "is prescribed to treat schizophrenia.  It is also used for the short-term treatment of mania associated with bipolar disorder.  Researchers believe that it works by opposing the action of serotonin and dopamine, two of the brain's major chemical messengers."  Id. at http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/geo1590.shtml.

because she gets restless and she thinks that people are against her, which would cause problems on the job.  (Tr. 126-27).

Mr. Harris said plaintiff has not fully accepted that she has impairments and thinks she can do things herself.  For example, he testified that when she was found to be disabled in 1995 and 1996, she did not want to stay home but wanted to work and finally did get a job.  But, he said, she would have to stay at home for a week because of illness and would have to double her medicine.  Mr. Harris testified that his wife is embarrassed about her illness and gets mad at him when he tells her things.  He said she is currently on medication.  (Tr. 127).

Plaintiff's husband stated that, if Harris tried to work, she would get confused at times and would have a lot of pressures.  He said her problems have been ongoing for 19 years and that he can tell when something is wrong because she starts staring, thinking about things and imagining things.  He said this happened every time she got a job.  (Tr. 128).

Mr. Harris testified that his wife has periods of good times and periods of bad times, and sometimes has needed to be hospitalized.  He said the good times do not last long.  He stated that she is currently in the middle, but there is not a day when there is not a complication.  (Tr. 129).

11

Mr. Harris said that plaintiff drives without any problems, does some housework, cooks, does laundry, shops for groceries with him most of the time and is very active in her church.  (Tr. 130).

C.    Vocational Expert Testimony

Tom Meunier, a vocational expert, testified at the hearing.   Plaintiff's representative at the hearing, Thomas Scrubbs, was given the opportunity to ask voir dire questions of the vocational expert, but had no questions.  (Tr. 130-31).

Meunier stated that plaintiff's prior work history as an accountant was sedentary skilled work with an SVP skill level of 8.[7]

---

[7]"SVP" stands for Specific Vocational Preparation, which

is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.
. . . .
The following is an explanation of the various levels of specific vocational preparation:

| Level | Time |
|---|---|
| 1 | Short demonstration only |
| 2 | Anything beyond short demonstration up to and including 1 month |
| 3 | Over 1 month up to and including 3 months |
| 4 | Over 3 months up to and including 6 months |
| 5 | Over 6 months up to and including 1 year |
| 6 | Over 1 year up to and including 2 years |
| 7 | Over 2 years up to and including 4 years |
| 8 | Over 4 years up to and including 10 years |
| 9 | Over 10 years |

Dictionary of Occupational Titles App. C, ¶ II (4th ed. rev. 1991), avail. at http://www.oalj.dol.gov/public/dot/REFRNC/DOTAPPC.HTM.

The ALJ posed a hypothetical to the vocational expert of a claimant with plaintiff's qualifications and experience who has a moderate impairment in concentration that would preclude skilled work. Meunier testified that such a claimant would have skills transferable to jobs at the semi-skilled level, such as accounting on a much less skilled level. Meunier gave examples of sedentary, semi-skilled jobs at the SVP 3 and 4 level, such as simple bookkeeping, simple general ledger bookkeeping, auditing clerk, accounts receivable and payable clerk. (Tr. 131). In addition, Meunier testified that lower-skilled SVP 3 jobs were available, such as types of cashiering and payroll time-keeping clerk, with which the claimant should be familiar, having worked as an accountant. (Tr. 131). He stated that the claimant would have to be reliable enough to function adequately on a sustained basis for an eight-hour work day and that these jobs would require more than a modest degree of ability to maintain concentration and attention. (Tr. 132).

D.   Medical Evidence

I have reviewed the medical records in evidence and the ALJ'S summary of the medical evidence. (Tr. 11-13). I find the ALJ'S summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections, and highlights noted below.

E.     Plaintiff's Appeal

      1.     *Plaintiff's Attempt to Introduce New Evidence*

Harris has attached voluminous documents to her memorandum of facts and law, which she asks the court to consider.  Although some of these are duplicates of documents in the administrative record, most of them are documents from outside of the administrative record concerning plaintiff's contacts with her representative and the Social Security Administration, and concerning another application for benefits that she filed <u>after</u> the instant application was denied.  None of the documents are new medical records.  In addition, Harris asks the court to subpoena numerous witnesses.  Record Doc. No. 11, at pp. 6-7.

As previously noted, this court has jurisdiction only to hear plaintiff's appeal from the Commissioner's "final decision," which consists of the ALJ'S decision.  42 U.S.C. § 405(g); <u>Sanders</u>, 430 U.S. at 107-08; <u>Brandyburg</u>, 959 F.2d at 559.  "A 'final decision' is a particular type of agency action, and not all agency determinations are final decisions."  <u>Bacon v. Sullivan</u>, 969 F.2d 1517, 1519 (3d Cir. 1992) (citing <u>Califano</u>, 430 U.S. at 107-08).  The procedural steps at the administrative level leading up to the ALJ'S decision are not final decisions.

Furthermore, this court's function is limited to determining whether there is substantial evidence <u>in the record</u> to support the final decision of the Commissioner.

14

Waters, 276 F.3d at 716; Loza, 219 F.3d at 389; Spellman, 1 F.3d at 360. Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

Thus, this court cannot review the numerous procedural steps leading up to the ALJ'S final decision, subpoena witnesses or consider additional documentary evidence to make new findings of fact.

This court may not issue factual findings on new evidence and may review such evidence only to determine if a remand is appropriate. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995); Haywood v. Sullivan, 888 F.2d 1463, 1471 (5th Cir. 1989). The court may only remand for consideration of new evidence upon a showing that the evidence is new and material and that good cause exists for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g); Leggett, 67 F.3d at 567.

"New evidence may be grounds for remand if it is material; this materiality inquiry requires determining whether the evidence relates to the time period for which the disability benefits were denied, and whether there is a reasonable probability that the new evidence would change the outcome of the Commissioner's decision." Castillo v. Barnhart, 325 F.3d 550, 551-52 (5th Cir. 2003).

None of the documents submitted by Harris meets this standard. The information she has provided contains <u>no</u> new medical records. There is no probability that the documents submitted would change the outcome of the Commissioner's decision because they are not relevant or material to the ALJ'S final decision concerning whether she is disabled.

2.   *Whether the ALJ erred by failing to obtain all of plaintiff's medical records since 1984.*

Harris argues that the ALJ erred by failing to obtain all of her medical records since 1984, although she signed medical releases to obtain the records.

It is the duty of the ALJ to develop fully and fairly the facts relative to a claim for benefits. <u>Carey v. Apfel</u>, 230 F.3d 131, 142 (5th Cir. 2000); <u>Brock v. Chater</u>, 84 F.3d 726, 727 (5th Cir. 1996). When he fails in that duty, he does not have before him sufficient facts on which to make an informed decision. Consequently, his decision is not supported by substantial evidence. <u>Id.</u>; <u>Leggett</u>, 67 F.3d at 566.

In the instant case, the administrative record contains medical records from River Parishes Mental Health Clinic ("RPMHC") dated from November 28, 2001 through August 15, 2003 (Tr. 67-74) and from April 7, 2004 through May 20, 2004 (Tr. 106-11), and records from St. Charles Parish Hospital dated January 21, 2004 through February 2, 2004. (Tr. 94-105). There are no records of hospitalizations in September 2002 or

February 1999, although plaintiff testified that she had experienced an acute illness and/or had been hospitalized at those times.

The ALJ did not err by failing to obtain additional medical records.

First, Harris alleges a disability onset date of September 13, 2002.  Medical records for up to 12 months before that date might be relevant to establish plaintiff's longitudinal medical history and the continuous period of not less than 12 months necessary to establish disability for purposes of the Act.  However, the record need not contain all of plaintiff's medical records dating back to 1984 for the ALJ to decide whether she was disabled during the relevant time period of September 13, 2002 through the date of his decision.

Second, Harris bears the burden of proving her disability and of producing sufficient medical evidence to carry that burden.  Newton, 209 F.3d at 453; Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991) (citing 20 C.F.R. § 404.1516).  If she is unable to provide sufficient medical evidence, the ALJ may make a decision based on the information available.  Id.; Anderson v. Sullivan, 887 F.2d 630, 634 (5th Cir. 1989).

In this case, the medical record contained substantial evidence upon which the ALJ could make a decision.  In addition to the records described above from RPMHC and St. Charles Parish Hospital, the ALJ reviewed a consultative examination report by

a psychiatrist, Padmini Nagaraj, M.D. (Tr. 75-77), and the opinion of the Social Security

Administration's medical consultant, D.E. LeBlanc, M.D.  (Tr. 78-91).

Third, reversal of the ALJ'S decision for failure to develop the record is

appropriate only if the applicant shows that she was prejudiced by the failure.  Carey, 230

F.3d at 142; Newton, 209 F.3d at 458; Ripley, 67 F.3d at 557.  "Prejudice can be

established by showing that additional evidence would have been produced if the ALJ

had fully developed the record, and that the additional evidence might have led to a

different decision."  Id. at n.22 (citation omitted) (emphasis added); accord Carey, 230

F.3d at 142.

Harris has not shown that she was prejudiced by the lack of additional evidence

in the record.  The ALJ accurately summarized the evidence in his opinion.  Substantial

evidence supports his findings, for the reasons he cited.

The ongoing treatment notes of the RPMHC health care providers indicate that

Harris was stable and doing well on her medications during 2002 and 2003.  (Tr. 69-70).

The treatment notes do not reflect a psychotic breakdown in September 2002, as plaintiff

testified.  On November 7, 2002, when she returned to see her psychiatrist after three

months as scheduled, plaintiff reported that she was doing well with her medications.

She said she had lost her job and insurance coverage, but there is no mention of a

hospitalization or other extreme episode, nor are there any notes between her regularly

18

scheduled visits of August 7 and November 7, 2002.  Her medications on the latter date were continued in the same dosages as in the four preceding visits.  (Tr. 72, 73, 74).  The only complaints that plaintiff reported in 2003 were about her lack of income, gaining weight with Zyprexa and feeling drowsy after her medication was changed to Geodon. (Tr. 68, 69).

Harris was hospitalized at St. Charles Parish Hospital from January 21 through February 2, 2004 with an admitting diagnosis of acute psychosis and principal admitting diagnoses of bipolar disorder, manic with psychotic features, and diabetes mellitus. (Tr. 93).  She was treated with Geodon and Topamax[8] and her psychotic symptoms resolved.  Plaintiff was discharged in a possibly hypomanic[9] state, trending towards euthymia.[10]  She was deemed not dangerous to herself or others, was released to activity as tolerated and was to continue taking Geodon and Topamax.  (Tr. 99).

Progress notes from the RPMHC from April through May 2004 indicate that Harris complained of adverse side effects from her medications and was guarded and

---

[8]Topamax (generic name:  topiramate) "is an antiepileptic drug, prescribed to control both the mild attacks known as partial seizures and the severe tonic-clonic convulsions known as grand mal seizures.  It is typically added to the treatment regimen when other drugs fail to fully control a patient's attacks." PDRhealth, avail. at http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/top1541.shtml.

[9]Hypomania is "an abnormality of mood resembling mania (persistent elevated or expansive mood, hyperactivity, inflated self-esteem, etc.) but of lesser intensity."  Dorland's at 864.

[10]Euthymia is "a state of mental tranquility and well-being; neither depressed nor manic."  Id. at 629.

preoccupied.  The nurse on April 7, 2004 observed that Harris was using Zyprexa apparently in a way that was not prescribed and the nurse advised Harris against doing that.  On April 13, 2004, plaintiff presented to the nurse with some paranoid thoughts. On April 28, 2004, she exhibited much thought disorganization and reported that she had stopped taking her Topamax and Geodon.  The nurse found this to be "very dangerous" and referred plaintiff immediately to her treating psychiatrist, Dr. Trinh, who spoke to her and continued her on Geodon, valproic acid[11] and Vistaril[12] for sleep.  (Tr. 106-11).

"[T]he ALJ has sole responsibility for determining a claimant's disability status. The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. . . .  The opinions may be assigned little or no weight when good cause is shown."  Newton, 209 F.3d at 455-56.  "Good cause" permits an ALJ to discount the weight of a physician's opinion relative to other experts when the physician's

---

[11]Valproic acid (brand name:  Depakote) "is used to treat certain types of seizures and convulsions.  It may be prescribed alone or with other epilepsy medications.  The delayed-release tablets are also used to control the manic episodes--periods of abnormally high spirits and energy--that occur in bipolar disorder (manic depression)." PDRhealth, avail. at http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/dep1125.shtml.

[12]Vistaril or Atarax (generic name:  hydroxyzine hydrochloride) "is an antihistamine used to relieve the symptoms of common anxiety and tension and, in combination with other medications, to treat anxiety that results from physical illness.  It also relieves itching from allergic reactions and can be used as a sedative before and after general anesthesia." Id. at http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/ata1035.shtml.

"evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." Id. at 456.

Harris was examined by consulting examiner, Dr. Nagaraj, on October 10, 2003. The ALJ declined to accept Dr. Nagaraj's conclusory opinion that plaintiff's "ability to function and perform in a job setting is minimal to none" because she had difficulty focusing and concentrating. (Tr. 77). The ALJ found that Dr. Nagaraj's opinion was inconsistent with the remainder of the psychiatrist's findings and with the medical evidence as a whole. (Tr. 12-13).

Furthermore, it is well established that a physician's statement that a patient is disabled does not mean that the patient is disabled for purposes of the Act, because that is a determination that may be made only by the Commissioner. Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003); Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001); Tamez v. Sullivan, 888 F.2d 334, 336 n.1 (5th Cir. 1989).

> [S]ome opinions by physicians are not medical opinions, and as such have no "special significance" in the ALJ'S determination. Among the opinions by treating doctors that have no special significance are determinations that an applicant is "disabled" or "unable to work." These determinations are legal conclusions that the regulation describes as "reserved to the Commissioner." . . . The doctor's opinion [that plaintiff could not work] was not a medical opinion within the meaning of the regulation.

Frank, 326 F.3d at 620 (quoting 20 C.F.R. § 404.1527(e), (1) & (e)(3)).

21

When weighing medical opinions, the ALJ has considerable discretion and is free to reject the opinion of any physician if the evidence supports a contrary conclusion.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d), (e); Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994); Spellman, 1 F.3d at 364; Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990); Milam v. Bowen, 782 F.2d 1284, 1287 (5th Cir. 1986).  Substantial evidence and good cause, including the conflicting opinion of the state medical consultant, Dr. LeBlanc; the treatment notes from RPHMC; and Dr. Nagaraj's inconsistent findings, support the ALJ'S decision to reject Dr. Nagaraj's conclusion that plaintiff cannot work.

> 3. *Whether the ALJ erred by failing to consider plaintiff's pre-hearing letter objecting to the testimony of a vocational expert.*

> 4. *Whether the ALJ erred by accepting the conclusions of the vocational expert, which were based on allegedly inadequate information, and because the vocational expert was not a physician.*

The ALJ found at the fourth step of the sequential analysis that Harris has the residual functional capacity to perform light work with the restrictions noted in his opinion.  At the fifth step, the ALJ relied on the testimony of the vocational expert to find that jobs exist in the economy that plaintiff is capable of performing.

Harris argues that the ALJ failed to consider her pre-hearing letter objecting to the testimony of a vocational expert and by accepting the vocational expert's conclusions,

which were allegedly based on inadequate information, and because the vocational expert was not a physician.  These assignments of error are meritless.

Although plaintiff includes in the attachments to her memorandum a copy of a letter dated December 13, 2004 that she purportedly sent to the ALJ in which she objected to the need for a vocational expert, no such letter appears in the record.  In any case, plaintiff's representative was given the opportunity to ask both voir dire and substantive questions of the vocational expert, but he declined to do so.  He did not object to Meunier's qualifications or testimony.  (Tr. 130-31, 132).

Medical evidence is not the only type of evidence that the ALJ may consider.  The Commissioner may properly rely on vocational expert testimony to reach conclusions about the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.  20 C.F.R. § 404.1566(d), (e); Leggett, 67 F.3d at 565; Vaughan v. Shalala, 58 F.3d 129, 132 (5th Cir. 1995); Villa, 895 F.2d at 1022.

Harris suffers from a severe nonexertional impairment, paranoid schizophrenia.  If "the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, then the Commissioner must rely on a vocational expert to establish that such jobs [that the claimant can perform] exist in the economy."  Newton, 209 F.3d at 458 (emphasis added) (citation omitted).  Thus, the ALJ was

required to admit the testimony of a vocational expert at the fifth step of the evaluation and properly relied on it to reach his conclusions.

5.      *Whether the ALJ failed to listen to plaintiff's testimony about the errors that the Commissioner had made concerning plaintiff's file.*

Harris argues that the ALJ failed to listen to her complaints about the procedural errors in processing her file before the hearing.  This argument is meritless.

The function of the ALJ is to determine, based on the medical and other evidence and using the applicable legal standards, whether plaintiff is disabled and entitled to benefits.  See generally 20 C.F.R. §§ 404.944, 404.946, 404.950.  The function of the ALJ is not to review the delays or other alleged procedural errors that occurred at the initial and reconsideration levels of the process.

6.      *Whether the ALJ erred by allowing another judge to sign his decision letter for him.*

Plaintiff contends that it was error for the ALJ to allow another judge to sign his decision letter for him.  She makes no argument that this was in any way prejudicial.  This assignment of error lacks merit.

## CONCLUSION

The ALJ did not err by failing to obtain additional medical records or by admitting and relying on the testimony of the vocational expert.  Substantial evidence supports the ALJ'S findings that plaintiff has the residual functional capacity to do light work with the

24

restrictions noted in his opinion and that jobs exist in the national and state economy that plaintiff is capable of performing.

### **RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 14th day of March, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE